IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA SCHWEIKART, | CIVIL ACTION NO._____ |
| Plaintiff, | ELECTRONICALLY FILED |
| v. | |
| BOROUGH OF WAYNESBURG and ROBERT J. TOTH, | COMPLAINT IN CIVIL ACTION |
| Defendants. | |

Filed on behalf of Plaintiff:

LISA SCHWEIKART

Counsel of Record for this Party:

Matthew C. Cairone

PA ID NO 49638

THE CAIRONE LAW FIRM PLLC

PMB 58

1900 MAIN ST, STE 107

CANONSBURG PA 15317-5861

(724) 416-3261

mcc@caironelawfirm.com

JURY TRIAL DEMANDED

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA SCHWEIKART, | CIVIL ACTION NO._____ |
| Plaintiff, | ELECTRONICALLY FILED |
| | COMPLAINT IN CIVIL ACTION |
| v. | |
| BOROUGH OF WAYNESBURG and ROBERT J. TOTH, | |
| Defendants. | |

<u>COMPLAINT</u>

Plaintiff, Lisa Schweikart, files this Complaint against Defendants Borough of Waynesburg and Robert J. Toth and states the following:

<u>I. Jurisdiction, Venue and Exhaustion of Administrative Remedies</u>

1. This is an action for money damages, declaratory relief, and injunctive relief. It is brought under Title VII of the Civil Rights Act (42 U.S.C. Sections 2000e et seq.) ("Title VII"), as amended by the Pregnancy Discrimination Act, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. Sections 951-963.

2. This Court has original jurisdiction under 28 U.S.C. Section 1331, and should exercise its supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367(a).

3. Venue in this District is proper under 28 U.S.C. Section 1391(b) because the parties reside in this District and the unlawful practices complained of occurred in this District.

4. In or around August, 2016, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the Borough of Waynesburg engaged in sex (pregnancy) discrimination and unlawful retaliation. This charge was dual filed with the Pennsylvania Human Relations Commission ("PHRC"). On August 9, 2018, the EEOC issued a Notice of Right to Sue.

## II. Parties

5. Paragraphs 1 through 4 are incorporated.
6. Plaintiff is an adult citizen who resides in Jefferson PA. Plaintiff is a part-time police officer with the Borough of Waynesburg Police Department. She is a member of a protected class (female).
7. Lisa Schweikart's maiden name is Lisa Sowden. When she married her name was changed legally to Lisa Schweikart, but for the purpose of her employment with the Borough of Waynesburg she continued, and continues, to use her maiden name. Lisa Schweikart, also known as Lisa Sowden, is referred to in this Complaint as the "Plaintiff."
8. Plaintiff is a nonexempt employee of the Borough of Waynesburg within the meaning of Title VII and the PHRA.
9. Defendant Borough of Waynesburg ("Waynesburg") is a borough in Greene County PA with its principal office at 90 East High Street, Waynesburg, PA 15370. Waynesburg is a "person" and an "employer" within the meaning of Title VII and the PHRA.
10. Defendant Robert J. Toth ("Chief Toth") is an adult male who is the Chief of Police in Waynesburg. On information and belief, he resides in Carmichaels PA. Chief Toth is sued individually and in his official capacity with Waynesburg.

## III. Facts Giving Rise To This Action

11. Paragraphs 1 through 10 are incorporated.
12. In or around May, 2013, Plaintiff first applied for a position as a police officer with Waynesburg.
13. As part the application process, Plaintiff took written and oral civil service exams on June 1, 2013.
14. On June 3, 2013, Waynesburg reported that Plaintiff had scored the highest among the thirteen candidates who tested.

15. Because Plaintiff had not yet completed her full police certification, she was not hired in 2013.
16. Upon completion of her police certification, Plaintiff was hired by Waynesburg as a part-time police officer in January 2014.
17. At the time Plaintiff was hired, Chief Toth told her she would be first in line for any full-time police officer position that opened up. This statement was consistent with the policy of the police department, that is, that the part-time officer hired through the civil service process and with the highest score on the civil service exam would be hired first to fill any vacancy on the full-time force.
18. As a police officer, Plaintiff's duties include patrolling the Waynesburg area in a marked squad car, engaging in community-building relations with residents, issuing traffic citations and warnings, responding to calls for service, investigating complaints of criminal and non-criminal activity, conducting crime prevention activities, providing traffic direction and control, and making arrests and court appearances as necessary.
19. On April 1, 2015, Plaintiff wrote a letter to Chief Toth requesting consideration for the full-time police officer position opening that was created by a resignation within the police department.
20. Despite the earlier statement from Chief Toth that Plaintiff would automatically be promoted into the first full-time vacancy on the police force, and despite the policy with which the statement was consistent, Plaintiff received no reply to the request and was not promoted to a full-time police officer.
21. On September 11, 2015, Plaintiff wrote a letter to Chief Toth following up on her request for full-time employment.
22. Again, Plaintiff received no reply to the follow-up request and was not promoted to a full-time police officer.
23. Plaintiff got married near the end of 2015.
24. Plaintiff's doctor, Dr. Charles Hochberg, wrote a letter on April 13, 2016, notifying Waynesburg and Chief Toth that Plaintiff was under his care for her pregnancy and suggesting lifting and dragging restrictions. In context, the doctor thought Plaintiff could continue on active duty, since he suggested providing a partner at 35 weeks gestation.

25. Plaintiff hand-delivered the April 13, 2016 letter to Chief Toth. After reviewing the letter, and in Plaintiff's presence, Chief Toth took the duty roster for upcoming police shifts and immediately crossed out all of Plaintiff's scheduled shifts with a red pen.
26. Chief Toth offered Plaintiff no explanation for the schedule changes, and insisted on talking with Plaintiff's doctor.
27. On information and belief, Chief Toth called Plaintiff's doctor and demanded another letter from the doctor with more specific information.
28. Plaintiff's doctor wrote a second letter on April 14, 2016.
29. On April 14, 2016, Chief Toth told Plaintiff she could not attend defensive tactics training and formally removed Plaintiff from all remaining work schedules and did not assign her for any other shifts.
30. On April 15, 2016, Plaintiff went to the police station to request a subpoena for a case on which she was working. Chief Toth told her that he had called her doctor again insisting to know her due date and that he was not scheduling her for work due to her pregnancy.
31. On April 20, 2016, Plaintiff sent a text to Chief Toth asking if she had been scheduled for any work, and she received no reply.
32. On information and belief, Toth called Dr. Hochberg's office and insisted on more clarification and more specific restrictions because Chief Toth did not think the Plaintiff could or should be a police officer while pregnant.
33. Plaintiff told Chief Toth that she was physically able to do her job as a police officer with minimal accommodation; Chief Toth refused to assign her any shifts.
34. Plaintiff told Chief Toth that she could do various light duty for the police department such as office work, filing, evidence room work, and other jobs; Chief Toth refused.
35. On April 21, 2016, Plaintiff went to the police station to change into her uniform for a scheduled court appearance before a district magistrate.
36. Chief Toth told her not to put on her police uniform because she was pregnant.
37. Plaintiff objected and said she could not appear in court in yoga pants and a tee shirt, which is what she had worn to the station that day expecting to change into her police uniform.

38. Chief Toth reluctantly relented and allowed Plaintiff to wear her police uniform to the court appearance but told her "don't ever get in uniform again while you're pregnant." Chief Toth also told her she could not drive or be in a patrol car because she was pregnant.

39. On April 22, 2016, Plaintiff got a call from her doctor and was told that Chief Toth was insisting on knowing Plaintiff's due date. The doctor's office, protecting the Plaintiff's privacy, told Chief Toth that the Plaintiff would inform him when she reached 35 weeks gestation and that, at such time, the doctor was recommending a partner for the Plaintiff.

40. On April 26, 2016, Plaintiff wrote a letter to Chief Toth. In this letter, the Plaintiff made clear that she felt that Waynesburg was discriminating against her on the basis of her pregnancy. She also reminded Chief Toth that Waynesburg had allowed non-pregnant police officers to be on light duty for various medical conditions. From at least this time forward, Waynesburg and Chief Toth knew that Plaintiff was engaged in protected activity.

41. In or around June or July 2016, Plaintiff was allowed to attend some police training in Greensburg, PA, but she was not permitted to drive there in a police vehicle because she was pregnant. On all occasions prior to her pregnancy she was permitted to drive a police vehicle to attend training.

42. In July 2016, Waynesburg hired two full-time police officers, one male and one female. On information and belief, and despite the policy described above that would have made Plaintiff the first of those to be hired, she was neither considered nor hired because she was pregnant.

43. Other than a few court appearances and the training, Plaintiff was offered no work of any kind, full or light duty, from the date of the letter notifying Waynesburg of her pregnancy, April 13, 2016, until after she was released back to work with no restrictions in May, 2017.

44. Since May 2017, Plaintiff has been offered only sporadic work, averaging one to two days a month, despite a need for part-time officers in Waynesburg.

45. Once Waynesburg and Chief Toth learned of Plaintiff's pregnancy she was removed from active duty as a part-time police and she was denied any "light duty."

### IV. COUNT I - PREGNANCY DISCRIMINATION: FAILURE TO HIRE

46. Paragraphs 1 through 45 are incorporated.
47. At all relevant times, Plaintiff was an employee of Waynesburg within the meaning of Title VII.
48. At all relevant times, Waynesburg was an employer of Plaintiff within the meaning of Title VII.
49. At all relevant times, Plaintiff, a female, was a member of a class protected by Title VII.
50. At all relevant times, Plaintiff was qualified for her position as a police officer with Waynesburg and fulfilled the legitimate job expectations of Waynesburg.
51. Waynesburg refused to make Plaintiff a full-time police officer because she was pregnant.
52. Waynesburg's actions constitute an intentional and unlawful employment practice and policy in violation of Title VII.

### V. COUNT II - PREGNANCY DISCRIMINATION: FAILURE TO ACCOMMODATE

53. Paragraphs 1 through 52 are incorporated.
54. Plaintiff informed Waynesburg and Chief Toth that she was pregnant.
55. Plaintiff informed Chief Toth that her doctor was not requiring that she be taken off of active duty. Plaintiff told Chief Toth she was willing and able to continue as an active duty police officer until such time as accommodations may be necessary, consistent with her doctor's advice.
56. Plaintiff told Chief Toth, consistent with her doctor's advice and notices, that she anticipated that, as her pregnancy progressed and especially at the 35th week of gestation, she would likely require accommodations, such as modification of her job duties, to continue working, and on several occasions attempted to initiate a dialogue to plan for and discuss those accommodations.
57. Chief Toth refused to discuss accommodations. Instead, he unilaterally communicated with her doctor's office and without explanation removed her from active duty and refused all of her requests for modified working conditions or light duty.

58. When Plaintiff realized that Chief Toth was not going to allow her active duty, she requested to be given non-patrol tasks. Such tasks could include record keeping, recording "walk-in" complaints, conducting witness interviews, assisting in follow-up investigations, performing clerical tasks, evidence room work, and assisting in crime-prevention work. Chief Toth rejected these proposals and consistently refused Plaintiff's efforts to discuss the availability of these tasks.
59. At all relevant times, Waynesburg had no written policy or procedure regarding light duty for police officers, pregnant or non-pregnant.
60. At all relevant times, Waynesburg had an informal, consistent, well-known policy and practice of granting temporary modified-duty assignments to non-pregnant police officers who experienced on or off the job injuries or medical conditions.
61. On information and belief, Waynesburg does not limit its assignments of temporary modified-duty and non-patrol tasks to police officers injured on the job, and has also assigned such tasks to non-pregnant officers simply in order to accommodate their personal preferences.
62. On information and belief, Waynesburg never has granted a temporary modified-duty or non-patrol assignment to an officer as an accommodation for pregnancy.
63. Waynesburg discriminated against Plaintiff based on her sex, and because of her pregnancy, in violation of Title VII, as amended by the Pregnancy Discrimination Act, by refusing to accommodate her pregnancy and/or pregnancy-related conditions while accommodating other, non-pregnant workers who were similar in their ability or inability to work, and instead removed her from active duty and failed to assign her to work in any capacity.
64. Waynesburg's purported reasons for refusing to accommodate Plaintiff are a pretext for sex discrimination.
65. Waynesburg's refusal to accommodate Plaintiff imposed a significant burden on her, and Defendant's purported reasons for its refusal are not sufficiently strong to justify that burden.
66. As a result of Waynesburg's unlawful sex discrimination, Plaintiff suffered significant monetary loss, including loss of earnings.

67. As a result of Waynesburg's unlawful sex discrimination, Plaintiff suffered emotional pain, suffering, and non-pecuniary losses.

## VI. Count III - Retaliation

68. Paragraphs 1 through 67 are incorporated.
69. Waynesburg retaliated against Plaintiff, in violation of Title VII, because she engaged in protected activity, including without limitation raising an internal complaint of sex (pregnancy) discrimination on or about April 26, 2016 and filing charges of discrimination with the EEOC and PHRC.
70. Such retaliation included without limitation the failure to hire her as full-time police officer in July, 2016.
71. Waynesburg's adverse actions would be likely to dissuade a reasonable employee from making or supporting a charge of discrimination.
72. As a result of Waynesburg's unlawful retaliation, Plaintiff suffered significant monetary loss, including loss of earnings.
73. As a result of Waynesburg's unlawful discrimination, Plaintiff suffered emotional pain, suffering, and non-pecuniary loss.

## VII. Count IV - Sex (Pregnancy) Discrimination - Chief Toth

74. Paragraphs 1 through 73 are incorporated.
75. The acts and practices of Waynesburg as described in this complaint are unlawful discriminatory employment practices under the Pennsylvania Human Relations Act.
76. By his conduct, as described in this complaint, Chief Toth aided and abetted the unlawful discrimination and is, therefore, personally liable under Pennsylvania Human Relations Act Section 955(e).

## VIII. Count V - Retaliation - Chief Toth

77. Paragraphs 1 through 76 are incorporated.
78. The acts and practices of Waynesburg of unlawful retaliation as described in Count III of this complaint are unlawful discriminatory employment practices under the Pennsylvania Human Relations Act.
79. By his conduct, as described in this complaint, Chief Toth aided and abetted the unlawful retaliation by Monessen and is, therefore, personally liable under Pennsylvania Human Relations Act Section 955(e).

PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief:

a. Declaratory relief, including without limitation a declaration that Defendants violated Title VII and the PHRA;

b. Injunctive relief, including without limitation revision of Waynesburg's policies with respect to accommodating pregnancy, childbirth, and related conditions, so that they comply with Title VII and the PHRA;

c. Compensation for loss of income;

d. Compensatory damages, including for emotional distress;

e. Pre-judgment and post-judgment interest at the highest rate allowed by applicable law;

f. Costs incurred, including reasonable attorneys' fees to the extent allowed by statute and law; and

g. Such other relief as the Court deems just and proper.

JURY TRIAL DEMAND

Plaintiff demands a jury trial on the matters alleged.

Respectfully submitted,

The Cairone Law Firm PLLC

*Matthew Cairone*
_____
Matthew Cairone
PMB 58
1900 Main St, Ste 107
Canonsburg PA 15317-5861
(724) 416-3261
mcc@caironelawfirm.com
Attorney for Plaintiff